**KASON INDUSTRIES, INC., Plaintiff,**

v.

**DENT DESIGN HARDWARE, LTD., Defendant.**

**Civil Action No. 3:12–cv–171–TCB.**

United States District Court,
N.D. Georgia,
Newnan Division.

June 7, 2013.

**1336**

Dorian Bruce Kennedy, Michael Joseph Powell, Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., Atlanta, GA, for Plaintiff.

Dan Robert Gresham, Norman Andrew Crain, Thomas Horstemeyer, LLP, Atlanta, GA, for Defendant.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This case comes before the Court on Defendant Dent Design Hardware, Ltd.'s motion to dismiss for lack of personal jurisdiction [11] and Plaintiff Kason Industries, Inc.'s motion for jurisdictional discovery [18].

### I. Background

Kason is a corporation specializing in refrigeration hardware. It is incorporated in New York and has its principal place of business in Newnan, Georgia. Kason is the owner of U.S. Patent No. 7,870,642 ("the § 642 patent"), which issued on January 18, 2011. That patent is directed to the design of a lateral adjuster for commercial refrigeration door hinges.

Dent is the owner of adjustable hinge D690, which Kason claims infringes the § 642 patent. Dent is incorporated in Pennsylvania with its principal place of business in Bethlehem, Pennsylvania. Kason avers that "this Court has personal jurisdiction over Dent because it has knowingly and actively engaged in acts that have infringed, will infringe, and/or aid and abet in the direct infringement of claims of Kason's patent" in this judicial district. Further, Kason avers that within this judicial district Dent has "made and continues to make, has offered to sell and continues to offer to sell, has sold and

continues to sell, has used and continues to use, and/or has imported and continues to import commercial refrigeration door hinges that infringe valid and enforceable claims of Kason's patent."

On November 2 and 15, 2012, Kason sent letters to Dent's president, Tim Dodge, notifying Dent that its D690 hinge infringed the § 642 patent. Dent continues to sell the hinge.

On December 3, Kason filed this patent infringement action. Dent subsequently filed a motion to dismiss for lack of personal jurisdiction.

### A. First Dodge Declaration

In support of its motion, Dent submits the declaration of Dodge and several exhibits. In his declaration, Dodge states that Dent has only one place of business, which is in Bethlehem, Pennsylvania; has a total of only seven employees; has no offices, manufacturing plants or distribution facilities in Georgia; has never been registered to do business here; has no employees, distributors or sales representatives residing or working in Georgia; pays no taxes here; does not target Georgia through print, television, radio or Internet advertising; does not own, rent, lease or occupy any real or personal property here; maintains no accounts in any financial institutions in Georgia; and is not listed in any telephone, business or other informational directory in Georgia. Dodge further declares that Dent has never solicited sales in Georgia; however, over the last six years it has made sporadic unsolicited sales of 271 replacement engine access cowling hinge assemblies to Blue Bird Corporation, a school bus manufacturer located in Georgia. According to Dodge's declaration, Dent's only sales in Georgia have been to either Blue Bird or Emily Chamberlin, who purchased $486.84 worth of accused hinges in September and October

2012. The sales to Chamberlin were in response to her email and telephone inquiries for an adjustable door hinge for a business she identified as Poke Press Repair. Dent later discovered that Chamberlin is the wife of David Katz-doft, Kason's national sales manager, and that there is no business registered as Poke Press Repair in Georgia. Finally, Dodge states that Dent maintains a website, www.dent-mfg.com that includes an order form for requesting products from Dent. All of Dent's exhibits relate to Chamberlin's orders.

### B. Finkelstein's Declaration

Although a significant portion of Dodge's declaration is dedicated to detailing Chamberlin's purchases, Kason does not rely on those transactions to establish jurisdiction. Instead, through the declaration of its vice president of operations, Burl M. Finkelstein, it points to other contacts Dent has with Georgia. Finkelstein first explains that the commercial refrigeration hardware industry essentially has three types of customers: original equipment manufacturers (OEMs), replacement hardware distributors and consumers, who include commercial equipment owners. OEMs purchase and incorporate certain hardware into the final products they manufacture, such as commercial refrigerators. Replacement hardware distributors act as middlemen, warehousing and selling hardware to consumers who need the original hardware on their equipment replaced.

Finkelstein states that Dent's products are incorporated into refrigerated equipment by at least two OEMs. First, International Cold Storage ("ICS") sells commercial refrigeration units that include Dent components to customers in Georgia through its website. ICS also "works with" ThermalRite and CrownTonka to

produce walk-in coolers, which incorporate Dent hardware. ThermalRite encourages consumers to find local representatives such as Premier Equipment Group, Inc., located in Georgia. Additionally, Dent's products are incorporated into refrigeration units sold by OEM Bally Refrigerated Boxes, Inc. Bally has sold and "may still sell" a high volume of units to consumers in Georgia, including McDonald's restaurants. Carman–Girard Associates, located in Atlanta, is a representative for Bally supporting Bally equipment needing replacement parts or repair.

According to Finkelstein, Dent also has at least three known distributors of its parts that sell to the Georgia market. SupplyDirect, Inc., located in Georgia, promotes and offers for sale ninety-eight Dent products and boasts on its website that it caters to local customers. Refrigeration Hardware Supply Corporation ("RHS") is also a Dent distributor, selling the D690 hinge in its catalog. And Franklin Machine Products ("FMP") promotes and sells Dent products through its website.

Along with Finkelstein's declaration, Kason submits several exhibits, which include pages from Dent's website, the relevant pages of Dent's catalog, pages from SupplyDirect's website www.KitchenStuff.com, selected pages from RHS's catalog, a page from FMP's website, a page from ICS's website, and pages from ThermalRite's website.

## C. Dodge's Supplemental Declaration [1]

In its reply brief in support of its motion, Dent submits a supplemental declaration from Dodge. In that declaration, Dodge states that Dent sells products to only three distributors: RHS, located in Colorado and California; FMS, located in New Jersey; and Case Parts, located in Missouri, California and Washington. These distributors carry a limited number of Dent products, which are sold as replacement parts for use with equipment that has been in the field more than ten years. Dent is unaware of sales from these distributors to customers in Georgia. Further, Dent is unaware of any sales to Georgia customers from OEMs Bally or ICS (neither of which operates facilities in Georgia), or ICS's affiliates ThermalRite or CrownTonka, which are not located in Georgia either. As to SupplyDirect, Premier Equipment Group, and Carman–Girard Associates, Dent has no relationship with these companies and has no knowledge as to whether these companies are selling actual Dent parts.

Further, Dodge declares that the D690 adjustable hinge that is at issue in this action is a specialty hinge only available directly from Dent. Dent has sold 1,928 of the hinges since January 2011; all but three of those hinges were sold to ICS, and the remaining three units were sold to Case. With the exception of the hinges sold to Chamberlin, Dent has not sold any accused hinges directly to customers in Georgia. Sales of the accused hinge account for approximately 2% of Dent's total sales for 2012 and approximately 1.4% over the two-and-a-half-year period to date.

---

1. Kason did not object to Dent's submission of the supplemental declaration. While the Court need not consider arguments raised for the first time in a reply brief, *Moore v. Hall*, No. CV 3:11–42, 2012 WL 3613095, at *4 n. 7 (S.D.Ga. July 25, 2012), Dent did not present new arguments in its reply brief, but responded to Kason's arguments with additional argument and evidence. Further, Kason actually relies on the supplemental declaration in support of some of its arguments in its motion for jurisdictional discovery. The Court will therefore consider the supplemental declaration.

Finally, Dodge states that in an effort to be as forthcoming as possible he has reviewed all of Dent's sales records since 2007. Those records reveal that Dent has made direct sales to twelve customers in Georgia other than Blue Bird; however, none of those sales was of the accused product. Further, those sales, including the sales to Blue Bird, amount to only one-half of one percent of Dent's sales from 2007 through 2012.

## II. Dent's Motion to Dismiss

### A. Legal Standard

■ Federal Circuit law governs personal jurisdiction in patent cases. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1328 (Fed.Cir.2008); *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564–65 (Fed.Cir.1994). In the absence of jurisdictional discovery, the plaintiff bears the burden of establishing only a prima facie case for personal jurisdiction. *Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1282 (Fed.Cir.2005). Where the plaintiff's factual allegations are not directly controverted, they are taken as true for purposes of determining jurisdiction, and any factual disputes are resolved in the plaintiff's favor. *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir.2010).

Personal jurisdiction may be based on either general or specific jurisdiction. The Supreme Court recently highlighted the difference between the two:

A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State. Specific jurisdiction, on the other hand, depends on an "affiliation between the forum and the underlying controversy," principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction."

*Goodyear Dunlop Tires Operations, S.A. v. Brown,* —— U.S. ——, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) (citations omitted); *see also Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (the requirements for specific personal jurisdiction are satisfied "if the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities" (citation and footnote omitted)).

### 1. General Jurisdiction

■ As the Supreme Court discussed in *Goodyear*, a defendant's contacts must be "so 'continuous and systematic' as to render them *essentially at home* in the forum." 131 S.Ct. at 2851 (emphasis added). "Neither the United States Supreme Court nor the Federal Circuit 'has outlined a specific test to follow when analyzing whether a defendant's activities within a forum are continuous and systematic.' Instead, the 'court must look at the facts of each case to make such a determination.'" *Lake Assocs., LLC v. DNZ Prods. LLC,* 886 F.Supp.2d 1203, 1208–09 (D.Or.2012) (quoting *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico,* 563 F.3d 1285, 1297 (Fed.Cir.2009); *LSI Indus. Inc. v. Hubbell Lighting, Inc.,* 232 F.3d 1369, 1375 (Fed.Cir.2000)); *accord Arlington Indus., Inc. v. Elec. Custom Distribs., Inc.,* 817 F.Supp.2d 473, 478

(M.D.Pa.2011) ("[A] district court will look to the aggregate effect of [the defendant's] contacts as a whole" to evaluate "whether the company's contacts are substantial for the forum." (citing *Aeration Solutions, Inc. v. Dickman,* 85 Fed.Appx. 772, 774 (Fed.Cir.2004) (internal quotation omitted))).

### 2. Specific Jurisdiction

■ A court's exercise of specific jurisdiction over an out-of-state defendant must be "consistent with both the forum state's long-arm statute and the requirements of due process." *Radio Sys. Corp. v. Accession, Inc.,* 638 F.3d 785, 788–89 (Fed.Cir.2011). Once a statutory basis for long-arm jurisdiction is established, the remaining question is whether the exercise of personal jurisdiction comports with due process. The Federal Circuit applies a three-prong test to determine if the exercise of personal jurisdiction over a defendant satisfies the requirements of due process, considering whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1363 (Fed.Cir.2006). As to the third prong of this test, "the burden of proof is on the defendant, which must 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' under the five-factor test articulated by the Supreme Court in *Burger King.*" *Id.* (quoting *Burger King,* 471 U.S. at 476–77, 105 S.Ct. 2174).

### 3. Stream of Commerce Theory

The Supreme Court has held that "placing goods into the stream of commerce 'with the expectation that they will be purchased by consumers within the forum State' may indicate purposeful availment" of that state's laws, so that personal jurisdiction over a non-resident defendant may be appropriate. *J. McIntyre Mach., Ltd. v. Nicastro,* — U.S. ——, 131 S.Ct. 2780, 2788, 180 L.Ed.2d 765 (2011) (plurality) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).[2] In *Asahi Metal Industry Co. v. Superior Court of California,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), four Justices believed that a defendant must do "something more" than merely deliver its product into the stream of commerce to be subject to jurisdiction in a forum:

> Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* at 112, 107 S.Ct. 1026 (O'Connor, J.). Four other Justices disagreed and would have held that establishing personal jurisdiction in a forum simply requires "regular and anticipated flow of products from man-

---

**2.** In *McIntyre,* Justice Kennedy also wrote that the stream of commerce "refers to the movement of goods from manufacturers through distributors to consumers, yet beyond that descriptive purpose its meaning is far from exact." 131 S.Ct. at 2788.

ufacture to distribution to retail sale." *Id.* at 117, 107 S.Ct. 1026 (Brennan, J., concurring) ( "As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."). Since *Asahi,* the Supreme Court has declined to reconcile the two approaches. *See generally McIntyre,* 131 S.Ct. 2780.

The stream of commerce precedent also applies in patent cases. In *Beverly Hills Fan,* 21 F.3d at 1566, the Federal Circuit held that the court had personal jurisdiction over the defendants because they had (1) "placed the accused [product] in the stream of commerce, [ (2) ] they knew the likely destination of the products, and [ (3) ] their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." In so holding, however, the Federal Circuit specifically declined to "join [the] debate" over which version of *Asahi* should apply because the plaintiff made a sufficient showing under both. *Id.* More recently, the Federal Circuit reiterated that personal jurisdiction premised on a stream of commerce theory involves a "case-by-case" inquiry of the "particular facts of a case." *AFTG–TG, LLC v. Nuvoton Tech. Corp.,* 689 F.3d 1358, 1362 (Fed. Cir.2012) (reviewing Federal Circuit precedent and concluding the court did not have personal jurisdiction over accused infringer "regardless of how one articulates the stream of commerce theory").

## B. Analysis

Kason contends that this Court has both general and specific jurisdiction over Dent. Even assuming Kason's uncontroverted allegations and facts are true, the alleged activity neither rises to the level of "continuous and systematic" activity to warrant general jurisdiction, nor has Dent directed any activities related to the accused device to Georgia such that this Court may exercise specific jurisdiction over Dent. Further, Kason has failed to show that this Court's exercise of jurisdiction over Dent is consistent with Georgia's long-arm statute.

### 1. General Jurisdiction

■ In its complaint, Kason makes two allegations related to jurisdiction: (1) Dent "has knowingly and actively engaged in acts that have infringed, will infringe, and/or aid and abet in the direct infringement of claims of Kason's patent" in this judicial district, and (2) Dent has "made and continues to make, has offered to sell and continues to offer to sell, has sold and continues to sell, has used and continues to use, and/or has imported and continues to import commercial refrigeration door hinges that infringe valid and enforceable claims of Kason's patent." In its brief in opposition to Dent's motion to dismiss, Kason more specifically articulates its claimed bases for the Court's jurisdiction and argues that Dent's extensive Georgia sales and distribution network support jurisdiction. First, it points to Dent's relationship with Blue Bird, contending that because Dent is a small company, the Court should presume that Dent's sale of 271 parts to Blue Bird over a six-year period constitutes a large percentage of Dent's business. Second, Kason argues that Dent's maintaining of at least one distributor—SupplyDirect—in Georgia, as well as having well-established trade channels of OEMs, supports jurisdiction. Third, Kason contends that Dent's website further supports this Court's exercise of jurisdiction.

■ As to Dent's sales to Blue Bird, Kason correctly submits that in a general jurisdiction analysis, when evaluating a nonresident's sales in the forum state, courts consider sales both on an absolute

scale and as a percentage of the nonresident's total sales. *See Web.com, Inc. v. Go Daddy Group, Inc.*, 2007 WL 7035105 (N.D.Ga.2007). Kason submits no evidence of relevant sales figures, but asks the Court to "presume" that Dent's sale of 271 parts to Blue Bird over a six-year period represents a "large percentage" of Dent's business. However, in Dodge's supplemental declaration, he states that Dent's direct sales to thirteen customers in Georgia, including Blue Bird, constitute only one-half of one percent of its sales from 2007 through 2012. Dodge also declares that none of those sales was of the accused product; Kason submits no evidence to the contrary.

■ As the Supreme Court recently reiterated, "mere purchases made in the forum State, even if occurring at regular intervals, are not enough to warrant a State's assertion of general jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Goodyear*, 131 S.Ct. at 2856 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Rather, the defendant's contacts must be so continuous and systematic as to render them "essentially at home" in the state to give general jurisdiction. *Id.* at 2851. Even *extensive* purchases do not necessarily make a defendant "at home" in a forum

so that it may be subject to a cause of action not related to those sales. *See id.* at 2856 (criticizing the "sprawling view of general jurisdiction" that would make "any substantial manufacturer or seller of goods ... amenable to suit, on any claim for relief, wherever its products are distributed."). Kason has not accused Dent of employing Georgia residents, maintaining any offices or property in Georgia, visiting Georgia, or having any contact with anyone in Georgia other than Blue Bird. Even construing the allegations and affidavits in Kason's favor, these facts do not support a finding that Dent's contacts are so extensive and continuous that it is "essentially at home" in Georgia. *Cf. Web.com, Inc.*, 2007 WL 7035105, at \*2 (no general jurisdiction where defendant did not "maintain and has never maintained any offices, facilities, employees, or equipment in Georgia" and did "not hold any financial accounts in Georgia, nor [was] it obligated to pay any taxes in Georgia," even though approximately three percent of defendant's customers resided in Georgia).

■ The Court next turns to Kason's argument that Dent is subject to general jurisdiction through placing its products in the stream of commerce. According to Kason, because Dent's products are distributed in Georgia by SupplyDirect, which is located in Georgia,[3] and OEMs, Dent is subject to jurisdiction in Georgia. In sup-

---

**3.** Kason emphasizes that SupplyDirect touts its ability to cater to local businesses. The statement Kason points to was published on SupplyDirectInc.com and states: "Today SupplyDIRECT maintains multiple websites, caters to local businesses and operates a true warehouse dedicated to keeping parts close at hand so you can Get it Right ... Get it Fast!" However, Dent's products are not sold on SupplyDirect.com, but on one of SupplyDirect's multiple websites, KitchenStuff.com. The Court has reviewed KitchenStuff.com and nowhere on that site has it found a statement regarding catering to local businesses. In-

stead, that site clearly caters to a worldwide market, allowing users to select from seventy-one languages and having testimonials from customers in Boston, Japan, Pennsylvania, West Virginia, and Ohio (but none from Georgia). Additionally, it appears from the website that customers place orders only through the website or by calling the toll-free number; in other words, there does not appear to be an option for local customers to pick up orders directly from KitchenStuff.com's Georgia warehouse or have SupplyDirect employees personally deliver orders.

port of its argument, Kason contends that in *Avocent*, 552 F.3d at 1331, the Federal Circuit left open the question of whether contacts based solely on the stream-of-commerce theory may suffice to establish general jurisdiction. This Court recently rejected such an argument in *Atlantis Hydroponics, Inc. v. International Growers Supply, Inc.*, No. 1:12–cv–1206–CAP, 2013 WL 28102, at *9 (N.D.Ga. January 3, 2013):

> Although the court in *Avocent* stated that a patentee's sales in a forum *"may* in the aggregate justify the exercise of general jurisdiction over the patentee," 552 F.3d at 1336 (emphasis added), the court did not so hold in that case; it merely hypothetically contrasted the activities that were necessary to find specific jurisdiction in a patent declaratory judgment action. Further, the Federal Circuit's "suggestion" that stream of commerce activities "may" possibly aggregate to justify general jurisdiction predated the Supreme Court's holding in *Goodyear*, which undercuts this theory. *See* 131 S.Ct. at 2856.

Accordingly, the Court rejects Kason's contention that Dent's mere placement of its product into the stream of commerce is sufficient to establish general jurisdiction. *See id.* (even assuming that the defendant had "extensive" sales in Georgia through distributors, such contacts were not continuous and systematic enough to render it at home in this forum).

■ Finally, Dent's maintenance of its website does not support jurisdiction. Dent's website is mostly static; while it displays an online catalog, there is no online ordering available, and interested customers must contact Dent by phone or email its sales department. But even if Dent's website were more interactive, general jurisdiction based upon Dent's maintenance of its website would be improper. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed.Cir.2008) ("[Plaintiff's] reliance on the defendants' maintenance of a website is also insufficient to give rise to general jurisdiction over the defendants in the State of Washington, as the website is not directed at customers in Washington and does not appear to have generated any sales in Washington."); *Trintec Indus., Inc.*, 395 F.3d at 1281 (defendant's website did not establish general jurisdiction in Washington because it was not specifically directed at Washington but instead was available to all customers throughout the country who have access to the internet); *see also Web.com, Inc.*, 2007 WL 7035105, at *3.[4]

For these reasons, the Court finds that general jurisdiction over Dent is lacking.

### 2. Specific Jurisdiction

■ Even where general jurisdiction is not available, specific jurisdiction may be exercised in the forum state if the state's long-arm statute permits service of process on the defendant and if due process considerations permit the exercise of jurisdiction over the defendant. *Campbell Pet Co.*, 542 F.3d at 884. Kason pays short shrift to the long-arm requirement, maintaining that "it is appropriate to collapse the personal jurisdiction inquiry into a single step" with due process.[5] However, the

---

4. Kason also argues that Dent's alleged practice of sending a copy of its catalog to customers who purchase products through its site constitutes contacts giving rise to general jurisdiction. Kason cites no authority for its contention. Further, based on Dent's limited number of sales to Georgia residents, the Court does not find that supplying those customers with catalogs to be a marketing effort extensive enough to confer general jurisdiction.

5. Kason does acknowledge that subsection (3) requires "additional contacts." However, as explained in more detail below, it offers little

Eleventh Circuit recently explained that in Georgia the long-arm and due-process inquiries are distinct because the Georgia long-arm statute imposes obligations that are independent of procedural due process requirements. *Id.* at 1259 (construing *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames,* 279 Ga. 672, 620 S.E.2d 352, 355 (2005)); *see also Thiele Kaolin Co., LLC v. BNSF Ry. Co.,* No. 5:10–cv–218 (MTT), 2011 WL 693093, at *5 (M.D.Ga. Feb. 18, 2011) (*"Diamond Crystal* makes clear that it is improper to pass over the long-arm statute analysis entirely and conflate it with, or collapse it into, the due process inquiry."). To satisfy the Georgia long-arm statute, the plaintiff must establish that jurisdiction is permitted under an express statutory provision, interpreted and applied literally. *Id.* Accordingly, the Court will not conflate the two requirements, as Kason proposes, but will analyze them separately.

### a. Georgia's Long–Arm Statute

Kason argues that jurisdiction over Dent is proper pursuant to subsections (1), (2) & (3) of Georgia's long-arm statute. That statute provides in pertinent part:

A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state, if in person or through an agent, he or she:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a

cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state. . . .

O.C.G.A. § 9–10–91.

■ Under the first prong, the narrow question is "whether [Dent] transacted any business in Georgia in a matter that gave rise to [Kason's] cause of action." *Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc.,* 593 F.3d 1249, 1264 (11th Cir.2010). To "transact any business" Dent must have "purposefully done some act or consummated some transaction" in Georgia. *Id.* at 1260 (quoting *Aero Toy Store, LLC v. Grieves,* 279 Ga.App. 515, 631 S.E.2d 734, 736–37 (2006)). " 'Transact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.' " *Id.* Jurisdiction under subsection (1) of the long-arm statute "expressly depends on the actual transaction of business—the doing of some act or consummation of some transaction—by the defendant in the state." *Id.* at 1260. Accordingly, the Court must "examine all of [Dent's] tangible and intangible conduct and ask whether it can fairly be said that [Dent] has transacted any business within Georgia." *Id.*

■ While Dent admits that it has made direct sales to thirteen Georgia customers, it maintains that none of those sales was of the accused product. Thus, it is clear that this action did not arise out of

---

argument regarding how the additional requirements imposed by that subsection are met.

those contacts, and in fact Kason does not rely upon those sales as the basis for jurisdiction. Instead, Kason points to Dent's established distribution network, contending that jurisdiction is proper because Dent places its offending products into the stream of commerce with the expectation that they will be purchased by consumers in Georgia.

In *Diamond Crystal,* the court explained that a defendant need not enter the state to have transacted business herein, meaning that "intangible" acts, such as mail and telephone calls to Georgia, should be considered. There, the court found that the defendant's acts of sending purchase orders to a Georgia manufacturer, requiring delivery by customer pickup, arranging for third parties to pick up in Georgia the product that the parties had purchased, and promising to pay money into Georgia were sufficient to show that it had transacted business here. Accordingly, subsection (1) of the long-arm statute was satisfied.

Here, in contrast, Dent has done none of the things that gave rise to personal jurisdiction in *Diamond Crystal.* Specifically, as set forth in Dodge's affidavit, Dent has no offices, manufacturing plants, or distribution facilities in Georgia, and it has never been registered to do business here. Similarly, it has no employees, distributors or sales representatives residing or working in Georgia, and it pays no taxes here. Further, Dent does not target Georgia through print, television, radio or Internet advertising. Moreover, Dent does not directly sell its accused products in Georgia, nor does it sell the accused hinges to any distributors or OEMs located in Georgia. Significantly, although Kason argues that distributors and OEMs sell products that include the accused device in Georgia, it offers no evidence to that effect. But even if Kason could show that the accused hinges have been incorporated into products that have been sold in Georgia, this would not mean that Dent itself has literally "transact[ed] any business" in Georgia. Accordingly, the Court does not find jurisdiction under subsection (1) of the long-arm statute. *Compare Askue v. Aurora Corp. of Am.,* No. 1:10–cv–948–JEC, 2012 WL 843939, at *4 (N.D.Ga. Mar. 12, 2012) (subsection (1) not met where defendant, which delivered its product to California, had no knowledge that product would be distributed in Georgia and plaintiff failed to show that distributor in fact serviced Georgia),[6] *with Thomas v. Strange Engg., Inc.,* No. 1:11–cv–74, 2012 WL 993244, at *4 (S.D.Ga. Mar. 22, 2012) (defendant transacted business pursuant to subsection (1) by shipping its product directly to a Georgia customer).

---

**6.** Although not cited by Kason, the Court is aware of one case addressing the issue of whether an out-of-state defendant that ships a product to a distributor in a state other than Georgia has transacted business in Georgia if the defendant's product is incorporated into a product that is eventually sold in Georgia. In *Vibratech, Inc. v. Frost,* 291 Ga.App. 133, 661 S.E.2d 185, 189 (2008), the Georgia Court of Appeals considered whether the manufacturer of an airplane damper was subject to jurisdiction under subsection (1) of Georgia's long-arm statute. The manufacturer had sold the damper to a company in New York, which in turn installed the damper in an engine. A Georgia company then purchased the engine. Despite the lack of any physical presence in the state, the court found that the defendant met subsection (1). Reasoning that it could not "limit [its] analysis to a strictly literal reading of the subsection's language," the court engaged in a due-process analysis. But in *Diamond Crystal,* 593 F.3d at 1254, the Eleventh Circuit construed *Innovative Clinical* as requiring a "literal application of the Georgia long-arm statute in addition to a due process inquiry in deciding whether personal jurisdiction exists over a nonresident defendant." The Court therefore finds the Georgia Court of Appeals' decision in *Vibratech* inapposite.

The Court therefore considers whether subsection (2) or (3), relating to tortious acts, is met.

 Under subsection (2), a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious act or omission within Georgia, so long as the exercise of that personal jurisdiction comports with constitutional due process. *Innovative Clinical,* 620 S.E.2d at 354.

Kason avers that Dent has sold the accused product in this district and insists that the Court must accept its averment as true. But the Court is required only to accept *uncontroverted* allegations in the complaint as true. *See AFTG–TG, LLC v. Nuvoton Tech. Corp.,* 689 F.3d 1358, 1360 (Fed.Cir.2012) (the "court accepts uncontroverted allegations in the complaint as true"). Here, Kason's averment is controverted by Dent's evidence that all of the accused hinges it has sold went to either ICS, which uses the components in refrigerators, or Case, which bought three units to be used as replacement parts. Kason submits no evidence that Dent has directly sold any accused hinges in Georgia, or that ICS or Case, which are both located outside of Georgia, have made sales of products that include the accused hinge to Georgia customers. Although Kason points to a press release in which ICS announces the installation of a walk-in "Beer Kave" cooler in Augusta, Georgia, Kason submits no evidence that the walk-in cooler implements any of the accused hinges in its design.[7] Under these circumstances, subsection (2) does not offer a basis for personal jurisdiction. *See Inno-*

*vative Clinical,* 620 S.E.2d at 354 (a nonresident "must do certain acts" as delineated by the statute before nonresident is subject to personal jurisdiction in Georgia); *Thomas,* 2012 WL 993244, at *4 (The clear language of subsection (2) requires that the nonresident defendant commit a tortious act *in the state of Georgia.*); *Anderson v. Deas,* 273 Ga.App. 770, 615 S.E.2d 859, 861 (2005) ("Although the injurious consequences would have been felt in Georgia, it is undisputed that [defendant] never came to Georgia so as to commit an act here."), *holding undisturbed on remand,* 279 Ga.App. 892, 632 S.E.2d 682 (2006) ("We further concluded that jurisdiction was not sustainable under paragraph (2) based on [defendant's] commission of a tortious act within this state.").[8]

 Under subsection (3), a Georgia court may exercise personal jurisdiction over a nonresident who commits a tortious injury in Georgia caused by an act or omission outside Georgia, only if the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." *Innovative Clinical,* 620 S.E.2d at 354. Rather than articulating how these requirements are met, Kason makes the conclusory assertion that the same contacts that satisfy general jurisdiction also satisfy subsection (3)'s additional requirements. Based on Kason's arguments regarding general jurisdiction, those contacts presumably include Dent's relationship with Blue Bird, placement of

---

7. The Court has reviewed ICS's website. On its website, ICS includes the architectural drawings detailing the parts used in its walk-in coolers. Significantly, Kason has not pointed to any of those architectural drawings as showing that the walk-in coolers include the accused hinge.

8. "Reading subsection (2) to provide personal jurisdiction in this case, where tortious conduct outside Georgia caused economic harm inside Georgia, would create an end around the more stringent requirements of subsection (3)." *Exceptional Mktg. Grp., Inc. v. Jones,* 749 F.Supp.2d 1352, 1363–64 (N.D.Ga.2010).

its products into the stream of commerce, and maintenance of its website.

Subsection (3)'s first requirement is the existence of a tortious injury. Citing *Trintec Industries*, 395 F.3d at 1280, Kason maintains that the injury from patent infringement occurs at the "place where the infringing activity directly impacts on the interests of the patentee," and therefore tortious injury has occurred in Georgia because Kason's interests have been affected here. However, Kason fails to cite the entirety of the relevant sentence from *Trintec:* "[I]n patent litigation the injury occurs at the place where 'the infringing activity directly impacts on the interests of the patentee,' *which includes 'the place of the infringing sales* [.]' " *Id.* (quoting *Beverly Hills Fan*, 21 F.3d at 1571) (emphasis added). The *Trintec* court explained that "if an infringing product is sold in the District of Columbia, that sale causes 'tortious injury' there" under the Washington, D.C. long-arm statute regarding tortious injury. *Id.* The "place of the infringing sales" language is significant because Federal Circuit "cases make clear that the tortious injury caused by patent infringement occurs within the state where the allegedly infringing sales are made." *Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1318 (Fed.Cir.2005) (citing *N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579 (Fed.Cir.1994); *Beverly Hills Fan*, 21 F.3d at 1571).

Indeed, in *Beverly Hills Fan*, the Federal Circuit squarely addressed the question of the situs of tortious injury in relation to a long-arm statute like the one at issue here. Virginia's long-arm statute conferred jurisdiction over an out-of-state defendant causing tortious injury in the forum state by an act or omission outside the state. The court noted that some district courts had found the residence of the patent owner to be the relevant location of the tortious injury. However, the court chose to adopt the rule that tortious injury occurs where infringing sales take place. It reasoned that "[e]conomic loss occurs to the patent holder at the place where the infringing sale is made because the patent owner loses business there," that "analysis of long-arm jurisdiction has its focus on the conduct of the defendant" and the plaintiff's "contacts with the forum—such as where the plaintiff resides—as a general proposition are not considered a determinative consideration," and such a rule is consistent with trademark and copyright cases. *Beverly Hills Fan*, 21 F.3d at 1571. Thus, in this case for subsection (3) to apply, there must be evidence of sales of the accused hinge in Georgia. As set forth above, Kason has adduced no evidence of actual sales of the accused product—by Dent or its distributors or OEMs—in Georgia, and subsection (3) is therefore inapplicable.[9]

But even if Kason could show tortious injury in Georgia, it has failed to show the additional requirement under subsection (3): that Dent "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." As set forth above, Dodges original declaration states that Dent has fulfilled unsolicited

9. In *Beverly Hills Fan*, 21 F.3d at 1571, the court held that the " 'act or omission outside this Commonwealth' requirement [was] satisfied given [the court's] previous conclusion that defendants purposefully shipped the accused fan into Virginia through an established distribution channel." As set forth in detail in the Court's specific-jurisdiction analysis, the Court is not convinced that Dent has channeled its products into Georgia through its distributors or OEMs. Thus, based on *Beverly Hills Fan*, it is unlikely that subsection (3)'s requirement of an act or omission outside of Georgia is met.

requests from Blue Bird for 271 parts over a six-year period. Further, in Dodges supplemental declaration he admits that Dent has directly filled orders for twelve other businesses in Georgia since 2007. However, Dodge also declares that Dents total direct sales to Georgia consumers constituted only one-half of one percent of its sales from 2007 through 2012. Based on the small amount of revenue Dent receives from Georgia, the Court does not find these contacts sufficient to establish that Dent regularly does business or engages in a persistent course of conduct in Georgia. This is especially true in light of the fact that none of these contacts are related to Dent's acts giving rise to this litigation.

Further, Dents placing its products into the stream of commerce is not sufficient to confer jurisdiction under subsection (3). First, Kason has submitted no evidence that Dents products actually reach Georgia through the stream of commerce. Finkelstein states that ICS sells commercial refrigeration units that include Dent components to customers in Georgia. But as set forth above, Kason's only evidence of ICS's sales to a Georgia customer is the walk-in cooler in Augusta, and Kason has failed to show that it included the accused device.[10] Thus, Finkelstein's statement is pure speculation. Additionally, Kason fails to cite any authority that Dent's sale of hinges to ICS, which then sold a refrigeration unit in

Augusta, is sufficient to establish that Dent regularly does business or engages in a persistent course of conduct in Georgia. *Cf. Red Wing Shoe Co. v. Hockerson–Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir.1998) ("In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota."); *Hayden v. Shin–Etsu Handotai Am., Inc.*, 80 F.Supp.2d 1119, 1123 (D.Or.1999) (citing *Red Wing* for the proposition that the Federal Circuit has "previously held that doing business at arms length with a company that in turn does business in the forum state is not a 'constitutionally cognizable' contact for purposes of personal jurisdiction.").

Finkelstein also states that Bally, another OEM, has sold a high volume of refrigeration units in Georgia including to McDonald's and "may still sell" units to consumers in Georgia, and that Carman–Girard Associates, located in Atlanta, is a representative for Bally, supporting Bally equipment needing replacement parts or repair. Essentially, Kason's argument is that jurisdiction exists based on (1) Bally's sale of refrigeration units to a single customer in Georgia—McDonald's, and (2) the fact that Bally's representative Carman–Girard Associates, which is in Georgia, sells replacement parts for Bally's refrigeration units and thus could potentially sell a replacement Dent part in Georgia.[11]

10. In a footnote, Kason also speculates that because Anheuser–Busch's logo is displayed on Dent's website, and Anheuser–Busch has a brewery in Cartersville, Georgia, Dent has likely made sales to Anheuser–Busch in Georgia. In his supplemental declaration, Dodge declares that Dent has not made direct sales to Anheuser–Busch. While Dodge does not disavow sales by its distributors to Anheuser–Busch, he does state that he has no knowledge of distributors or OEMs selling the accused hinge in Georgia.

11. Finkelstein provides no timeframe in which Bally allegedly sold the units to McDonald's. Dodge declares that replacement parts are usually required only when a unit has been in service for over ten years. Thus, based on Dodge's declaration, unless the Bally units are at least ten years old, it is unlikely that they need replacement parts.

Further, the evidence is that it would be nearly impossible for Carman–Girard Associates to sell the accused hinge. According to Dodge's supplemental declaration, Dent has sold the accused hinge almost exclusively to

The Court finds that such a chain of contact is too far removed from Dent to show any "persistent course of conduct" by Dent in Georgia. The same is true for Dent's alleged distributors. According to Finkelstein, SupplyDirect, Inc., located in Georgia, promotes and offers for sale ninety-eight Dent products on its website; RHS sells the D690 hinge in its catalog; and FHP promotes and sells Dent products through its website. But there is no evidence that any of these distributors target Georgia residents or have sold the accused hinge, or any other Dent product, to Georgia residents.

Second, Dodge makes clear in his supplemental declaration that Dent sells parts directly to only three distributors—RHS, FMS and Case Parts—none of which is located in Georgia. Further, Dodge declares that he has no knowledge of those companies making sales to Georgia, nor does he have knowledge of either of Dent's OEMs—Bally and ICS—or their affiliates making sales to Georgia. Applying the statute literally, the Court does not find that Dents sale of goods to OEMs and distributors outside of Georgia, which in turn sell Dents products through either catalogs or websites that are not directed to Georgia residents, establishes that Dent "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state."

Neither does Dent's website support a finding that it regularly does or solicits business in Georgia. Dent's website does not directly target Georgia residents in any way. "The Court cannot conclude that [Dent] regularly solicit[s] business *in Georgia* solely by operating a website that

is accessible here and everywhere else." *Jordan Outdoor Enters., Ltd. v. That 70's Store, LLC,* 819 F.Supp.2d 1338, 1345 (M.D.Ga.2011).

The Court therefore finds that no provision of Georgia's long-arm statute confers jurisdiction over Dent.

### b. Due Process

Furthermore, even if jurisdiction were appropriate under Georgia's long-arm statute, due process concerns prohibit this Court's exercise of jurisdiction over Dent. The Federal Circuit applies a three-prong test to determine if the exercise of personal jurisdiction over a defendant satisfies the requirements of due process, considering whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm.,* 444 F.3d at 1363. Because Dent does not argue the reasonableness prong, the Court analyzes only the first two prongs of the Federal Circuit's test.

Kason argues that Dent has purposefully directed activities at Georgia by supplying its OEMs and distributors with the accused product with the expectation that the accused product will be purchased in Georgia. In support of its contention, Kason relies upon the Federal Circuit's decisions in *Nuance Communications,* 626 F.3d at 1233, and *Beverly Hills Fan,* 21 F.3d at 1560. Both of those cases, however, are distinguishable.

In *Nuance Communications* the court found that defendant Abbyy Production, a software developer, had purposefully directed activities at residents of California. First, the court found significant that the

ICS, which does not directly resell the hinges, but incorporates them into its refrigeration units.

relationship between Abbyy Production and its distributor Abbyy USA did not involve an arms-length transaction between unrelated entities, but was based on an agreement between commonly-owned sister companies. Second, Abbyy Production had issued a statement expressing a desire to "win the whole U.S. market" by issuing its software in the United States, and admitted distributing that software through Abbyy USA, a California entity. Third, ninety-five percent of the profits from the sale of the software flowed to Abbyy Production. Fourth, Abbyy Production had agreed to provide Abbyy USA with new versions and updates of the software, technical support, and oral and written consultations. On these facts, the court concluded that Abbyy Production "knew the destination of its products, and its conduct and connections with the forum state were such that it should have reasonably have anticipated being brought into court there." *Id.* at 1234.

Here, in contrast to the defendant in *Nuance Communications,* Dent does not sell its product directly to a distributor in the forum state, its distributors are not its sister companies, and it has expressed no desire to conquer the U.S. market in adjustable hinges. Moreover, noticeably absent in this case is any continuing relationship between Dent and its distributors or OEMs. Whereas the defendant in *Nuance Communications* provided support for its product to the distributor in the forum state, Kason's evidence is that third parties—not Dent—provide repair parts for products containing Dent components. Thus, *Nuance Communications* is inapposite.

Kason's reliance on *Beverly Hills Fan,* 21 F.3d at 1560, is likewise misplaced. There, the Federal Circuit found specific jurisdiction where the plaintiff submitted affidavits that at least fifty-two units of

an accused fan were available for sale in six stores of the forum state, Virginia, and that included in the packaging of the accused product was a warranty from one of the defendant's known distributors. Significantly, the defendant did not submit an affidavit controverting the plaintiff's evidence that the accused product was sold in the forum through a distributor, but instead merely denied that it had made any direct sales of the fans in Virginia. The court concluded that the "allegations [were] that defendants purposefully shipped the accused fan into Virginia through an established distribution channel," and the facts showed that the distribution channel was "intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was Virginia." *Id.* at 1564–65.

 Kason has offered no evidence of any such established distribution channel for the accused hinges. Rather, its evidence is that Dent sells to OEMs and distributors, which then sell Dent's products through catalogs and websites. Kason submits no evidence that those catalogs or websites target Georgia customers. Thus, unlike the defendant in *Beverly Hills Fan* that purposefully shipped its product into stores in Virginia, Dent does not "channel" its products into Georgia. Further, in sharp contrast to the plaintiff in *Beverly Hills Fan* that submitted evidence of six stores in the forum state selling the accused product, Kason offers no evidence that the accused hinge has actually been sold in Georgia or that it is even offered for sale here other than through Dent's website, SupplyDirect's website (KitchenStuff.com) or FMP's website. As to those websites, this Court has found that a defendant does not direct its activities at Georgia by merely selling services over the Internet to all potential

visitors. *Web.com,* 2007 WL 7035105, at *3. Accordingly, Dent's offering of the accused product through its website does not subject it to jurisdiction, nor does Supply-Direct's or FMP's inclusion of the accused hinge on their websites.

■ Moreover, Dent submits evidence that it has only sold the accused hinge to ICS and Case, neither of which is located in Georgia.[12] Although Kason speculates that ICS might have sold a refrigeration unit containing the accused product in Augusta, Georgia, Kason produces no evidence that the accused hinge was used in the Augusta project. And importantly, the only evidence of ICS's marketing efforts to Georgia residents is its website, which is not directed at Georgia residents. If Dent's offering the accused product for sale through maintenance of its website does not support jurisdiction over it, then surely jurisdiction is not proper based on ICS offering for sale refrigerated units including Dent components on its website. Therefore, contrary to the facts at issue in *Beverly Hills Fan,* these facts do not support an inference that Dent is "aware that [ICS's] final product is being marketed in Georgia." *Asahi,* 480 U.S. at 117, 107 S.Ct. 1026.

The Court therefore finds this case more analogous to *AFTG–TG,* 689 F.3d 1358. There, the Federal Circuit held that there was no specific jurisdiction over the defendant in Wyoming. In so holding, the court noted that the plaintiff had not submitted any declarations refuting the defendants' assertion that their contacts with the forum state were sporadic at best. Additionally, the court found significant that the plaintiff had "proffered no evidence indicating that Wyoming was part of any defendant's continuous, established distribution channels, which was a significant factor supporting the exercise of personal jurisdiction in *Beverly Hills Fan.*" *Id.* at 1365. Finally, the court found that the plaintiff failed to submit any evidence that the accused product ever reached Wyoming. Likewise here, jurisdiction is improper because Kason has not shown that Georgia is part of Dent's continuous, established distribution channels, or that the accused product has actually reached Georgia. *See Sandisk Corp. v. ITE Techs., Inc.,* Nos. 7–cv–605–BBC & 7–cv–607–BBC, 2010 WL 1410728, at *6 (W.D.Wis. April 2, 2010) (refusing to draw inference that foreign manufacturer of component part could reasonably foresee that its parts would end up in Wisconsin absent evidence that (1) the end-product manufacturer's products are likely to end up in Wisconsin, and (2) either the component-part manufacturer's products can be expected to be found in a large number of end-products overall or at least can be expected to be found in a batch that arrived in Wisconsin).

Accordingly, the record before the Court does not support specific jurisdiction over Dent.[13]

**12.** Dent also states that the only direct sale of the accused hinge was to Chamberlin. Kason, however, does not rely on that contact for establishing jurisdiction. This is likely because the law is well-settled that a court should exclude from its analysis contacts that have been manufactured by the plaintiff. *See e.g., Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC,* No. 6:04–cv–211–Orl–22JGG, 2004 WL 5570662, at *6 (M.D.Fla. Aug. 20, 2004) ("[C]ourts typically disregard a defendant's responses to the unilateral acts of a

plaintiff when analyzing personal jurisdiction" because "[o]therwise, plaintiffs could manufacture jurisdiction over a non-resident defendant in any forum, regardless of how inconvenient, even when the defendant has not purposefully directed any activity toward the forum state.") (citations omitted).

**13.** In *AFTG–TG,* Chief Judge Rader wrote a concurring opinion setting forth his interpretation of the Supreme Court's recent decision in *McIntyre,* 131 S.Ct. 2780, which like *Asahi,*

### III. Kason's Motion for Jurisdictional Discovery

Kason has moved for leave to conduct jurisdictional discovery in the event that the Court concludes, as it has, that Dent's motion to dismiss should be granted. Kason seeks discovery to support both its general and specific theories of jurisdiction, and would request the following information from Dent: (1) its overall sales over the last five years and sales to distributors and OEMs that sell Dent's products in Georgia; (2) other contacts with Georgia, including directed marketing to Georgia addresses through catalogs, its website or otherwise; and (3) Dodge's familiarity with the facts to which he has testified thus far. Further, Kason seeks from Dent's OEMs and distributors: (4) sales of the accused product in Georgia; (5) total units of all of Dent's products in Georgia; (6) the nature of their relationship with Dent; and (7) the nature of the relationship between these entities and downstream Georgia distributors. Kason contends that (1), (5), (6) and (7) are relevant to general jurisdiction and (2) and (3) will elucidate issues related to specific jurisdiction. The Court does not agree that jurisdictional discovery is warranted.

First, much of the information Kason seeks related to general jurisdiction is relevant only to its stream-of-commerce theory. But as explained above, those contacts are not pertinent to a general jurisdiction inquiry. *See Atlantis Hydroponics,* 915 F.Supp.2d at 1379–80 (denying similar request for discovery because activities and particulars of defendant's dealings with its distributor in Georgia was not relevant to general jurisdiction); *Vogt v. Greenmarine Holding, LLC,* No. 1:01–cv–0311–JOF, 2002 WL 534542, at *7 (N.D.Ga. Feb. 20, 2002) (denying jurisdictional discovery because the evidence the plaintiff "anticipated being able to adduce in the discovery process" would "still have failed to make out a prima facie case of personal jurisdiction"). As to further information regarding Dent's overall sales in Georgia, although Kason contends that such discovery will demonstrate that Dent is subject to general jurisdiction based on the "high proportion of [Dent's] overall sales revenue that results from sales into Georgia," there is no evidence that Dent in fact generates significant revenue from sales to Georgia. Thus, such information would be nothing more than an impermissible " 'fishing expedition' in hopes that discovery will sustain the exercise of personal jurisdiction." *Parker v. Brush Wellman, Inc.,* 377 F.Supp.2d 1290, 1305 (N.D.Ga.2005). Because there is sufficient evidence before the Court for it to conclusively find that general jurisdiction over Dent is lacking, additional discovery as to that issue is not justified.

 Kason's requested information regarding specific jurisdiction may, however,

---

divided the Supreme Court on the question of specific jurisdiction premised on a stream-of-commerce theory. Judge Rader contends that Justice Bryer's opinion in *McIntyre,* which is the narrowest opinion and thus controls, departs from establishing jurisdiction on mere foreseeability, requiring something more than placing a product into the stream of commerce and being aware that the product may end up in the forum state.

Application of Judge Rader's theory would further bolster the Court's holding because even if Kason had shown that Dent's products have been sold in Georgia and that Dent had reason to know that those products would be sold here, Kason has still failed to show "something more," such as "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026.

be relevant to the personal jurisdiction question. After all, if ICS has sold refrigeration units including the accused part in Georgia, those sales are potentially relevant to the Court's specific jurisdiction stream-of-commerce analysis. Nonetheless, Kason, having paid little attention to the requirements of the Georgia long-arm statute in its brief in opposition to Dent's motion to dismiss, offers no argument here regarding how jurisdictional discovery might support a finding of long-arm jurisdiction. Specifically, Kason has presented no affidavits or arguments stating that it has any reason to believe that Dent has either transacted business related to the accused hinge in Georgia or that Dent regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Georgia. Thus, there are no disputed facts regarding long-arm jurisdiction; the Court will not grant Kason discovery on a mere "hunch that there may be facts—or a desire to find out if there are any facts—that justify the exercise of personal jurisdiction." *Atlantis Hydroponics*, 915 F.Supp.2d at 1379–80.

Because Kason has not shown that it is entitled to jurisdictional discovery, the Court will deny its motion.

## IV. Conclusion

For all of these reasons, Defendant Dent Design Hardware, Ltd.'s motion to dismiss for lack of personal jurisdiction [11] is GRANTED, and Plaintiff Kason Industries, Inc.'s motion for jurisdictional discovery [18] is DENIED. This case is DISMISSED for lack of personal jurisdiction. The Clerk is DIRECTED to close the case.