Peter Anthony **McCARTHY** and Maureen McCarthy,
Plaintiffs,

v.

**YAMAHA MOTOR MANUFACTURING CORPORATION** and Yamaha Motor Co., Ltd., Defendants.

**Civil Action No. 3:12–cv–117–TCB.**

United States District Court,
N.D. Georgia,
Newnan Division.

Jan. 24, 2014.

Peter J. McNulty, McNulty Law Firm, Los Angeles, CA, Jeffrey Paul Lutz, Gilbert, Harrell, Sumford & Martin, P.C., Brunswick, GA, for Plaintiffs.

Richard A. Mueller, Thompson Coburn, LLP, St. Louis, MO, for Defendant.

### ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This case comes before the Court on Defendant Yamaha Motor Co., Ltd.'s ("YMC") motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(2) [54].

## I. Background

This is a products-liability action. Plaintiffs Peter and Maureen McCarthy are Australian citizens, and on April 5, 2010, Peter was injured while operating a Yamaha WaveRunner personal watercraft in Queensland, Australia. Peter suffered, among other things, severe injuries to his spinal cord.

YMC is a Japanese corporation with its principal place of business in Japan. The WaveRunner was manufactured and assembled in Georgia by Defendant Yamaha Motor Manufacturing Corporation of America ("YMMC"). YMMC is a wholly owned subsidiary of Yamaha Motor Corporation, U.S.A. ("YMUS"), which is a wholly owned subsidiary of YMC. YMMC sold the WaveRunner to YMC, who then sold it to an Australian importer. The WaveRunner was shipped from Georgia to Australia, and the importer resold the WaveRunner to a retail dealer in Australia. The retailer subsequently sold the WaveRunner to one Mr. Noye, who owned the WaveRunner at the time of Peter's accident.

On March 16, 2012, the McCarthys filed this action in a California state court; YMC was not named as a Defendant. The McCarthys did name YMMC, YMUS, and another Yamaha entity, Yamaha Corporation of America ("YMCA"), as Defendants. On June 8, with the McCarthys' consent the Defendants removed the action the U.S. District Court for the Central District of California. And on June 13, the parties dismissed [7] YMUS and YMCA without prejudice because neither entity was involved in the design or manufacture of the WaveRunner.

On July 31, 2012, the district court granted the McCarthys' unopposed 28 U.S.C. § 1404 motion to transfer the action to this Court, and the case was transferred the next day. The McCarthys asked that the case be transferred on the basis that this Court was the more appropriate venue, as YMMC—the only Defendant at that time—has its principal place of business in this district.

On January 14, 2013, the McCarthys filed an unopposed motion to amend their complaint to add YMC as a Defendant. The McCarthys contended that they had recently learned that YMC was involved in the design of the subject WaveRunner, making YMC a necessary party. The Court granted their motion that same day, and on May 28, YMC filed an answer to the amended complaint. In its answer, YMC raised the defense of lack of personal jurisdiction.

On June 20, 2013—fifteen months after the action was filed—the parties filed a joint motion to extend the discovery period an additional nine months. They contended that additional time was necessary as a result of YMC's recent appearance in the case and because of various issues caused by the accident having occurred and the witnesses being located in Australia. That same day, the Court issued an order that granted the motion and explicitly warned the parties that the Court was not inclined to grant additional extensions.

On November 13, 2013, the Court held an in-chambers conference to discuss the complexities presented by key witnesses and evidence being located in Australia. The parties also brought to the Court's attention issues arising from their disagreement as to the governing law, and the Court instructed defense counsel to file a motion to determine the governing law. Defense counsel, who represents both YMC and YMMC, did not mention any issues involving personal jurisdiction.

On December 5, YMC filed its motion to dismiss for lack of personal jurisdiction, and the next day YMC filed a motion to apply the substantive law of Australia. This Order is limited to YMC's motion to dismiss.

## II. Personal Jurisdiction

YMC contends that it does not have sufficient contacts in Georgia to permit this Court to exercise personal jurisdiction over it. The McCarthys respond that YMC's motion should be denied because it is untimely and YMC waived any objection to personal jurisdiction. In the alternative, the McCarthys contend that they should be allowed jurisdictional discovery. The Court first addresses the McCarthys' procedural arguments and then the merits of YMC's motion.

### A. Timeliness of YMC's Motion

█ The McCarthys argue that YMC's motion is untimely under Local Rule 7.1(A)(2), which requires motions to be filed within thirty days of the beginning of the discovery period unless the party has obtained prior permission of the Court to file the motion later. The McCarthys contend that YMC's motion was filed well after this deadline and that it did not seek prior permission from the Court to file its motion out-of-time.

YMC responds that it was not added to this action until after this deadline had passed, so it could not have met the deadline. The Court agrees and rejects the McCarthys' argument on this point. *See, e.g., Atlantis Hydroponics, Inc. v. Int'l Growers Supply, Inc.,* 915 F.Supp.2d 1365, 1371 (N.D.Ga.2013) (personal jurisdiction

defense not waived when motion to dismiss was filed after deadline set by Federal Rules of Civil Procedure because defense was raised in first filing, i.e., its motion, as required).

### B. Waiver

█ The McCarthys also argue that YMC has waived its personal-jurisdiction defense even though YMC raised the defense in its answer. The McCarthys argue that YMC waived this defense when (1) seven months elapsed between YMC's filing its answer and motion; (2) YMC made affirmative representations to the Court during the November 21 conference about its future involvement in this case; and (3) YMC chose to litigate the merits of and participate in this case, e.g., filing the motion to determine the governing law.

YMC responds that it did not unreasonably delay in filing its motion and that it did not waive its validly raised defense through the conduct of its counsel. YMC contends that counsel's appearing on its behalf at the McCarthys' depositions and allegedly making representations about YMC's future involvement in the case to the Court are not sufficient to result in a waiver.[1] YMC also states that the McCarthys have not noticed or taken a single deposition since YMC joined the case,[2] and that they just recently propounded their first set of interrogatories. And YMC asserts that it has not served any discovery upon the McCarthys. Thus, YMC argues that it has not engaged in the extensive discovery and motions practice that has persuaded other courts to find waiver where a defendant delayed filing its personal-jurisdiction motion to dismiss. The

---

1. YMC does not respond to the McCarthys' argument that YMC seeks substantive relief from the Court in its motion to determine the governing law and that this action supports a finding of waiver.

2. The McCarthys' depositions were taken before YMC filed its answer.

Court agrees. *See Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 Fed.Appx. 376, 380–81 (5th Cir.2004) (defendant did not waive personal-jurisdiction defense where it included defense in answer and filed motion to dismiss just seven months later, and case was fairly dormant in that time period).

It does give the Court pause that YMC filed the motion to determine the governing law solely on its behalf and did not respond to the McCarthys' argument that this substantive motion waived the defense. Nonetheless, YMC's actions on the whole do not support a finding of waiver. YMC validly raised a personal-jurisdiction defense in its answer, and there has been minimal activity on the docket since then. And YMC represents that it has not propounded discovery and just recently received discovery from the McCarthys. Moreover, YMMC and YMC are represented by the same counsel, so counsel's appearance at the McCarthys' depositions was expected and does not support waiver. Thus, the Court rejects the McCarthys' waiver argument.

### C. Personal–Jurisdiction Legal Standard

Turning to the merits of YMC's motion, a plaintiff must allege sufficient facts in its complaint to make out a prima facie case of personal jurisdiction over a defendant. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257–58 (11th Cir.2010) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir.2009)). "A prima facie case is established if the Plaintiff presents enough evidence to withstand a motion for directed verdict." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir.2000).

Once the defendant submits evidence challenging the Court's exercise of personal jurisdiction pursuant to Rule 12(b)(2), the plaintiff may not rest on its allegations but must produce evidence supporting jurisdiction. *Id.* (quoting *United Techs.*, 556 F.3d at 1274); *accord Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir.2002). "Where there are conflicts between the parties' evidence, the court makes all reasonable inferences in favor of the plaintiff." *Diamond Crystal*, 593 F.3d at 1257 (quoting *Meier*, 288 F.3d at 1269); *see also Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir.1988).

A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment. *Diamond Crystal*, 593 F.3d at 1257–58. The Eleventh Circuit has explained that in Georgia, the two inquiries are distinct because the Georgia long-arm statute imposes obligations that are independent of procedural due-process requirements. *Id.* at 1259 (construing *Innovative Clinical Consulting Servs., LLC v. First Nat'l Bank of Ames*, 279 Ga. 672, 620 S.E.2d 352 (2005)).

■ To satisfy the Georgia long-arm statute, the plaintiff must establish that jurisdiction is permitted under an express statutory provision, interpreted and applied literally. *Id.* at 1259. To satisfy the constitutional requirement, the defendant must have "fair warning" of litigation in Georgia by establishing "minimum contacts" with the state. *Id.* at 1267. If such minimum contacts are shown, the defendant can escape the exercise of personal jurisdiction over it only by making a " 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

### 1. Georgia's Long–Arm Statute

██ Georgia's long-arm statute provides in pertinent part:

A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state

(4) Owns, uses, or possesses any real property situated within this state;

. . . .

O.C.G.A. § 9–10–91. YMC contends that jurisdiction under the long-arm statute is not permitted because it does not transact business in Georgia, did not commit a tort in this state, and does not own, use or possess any real property in Georgia. In support of its contention, YMC relies on the affidavit of Norihisa Mochizuki, a senior manager in YMC's legal and intellectual property division. Mochizuki testifies that YMC is not engaged in business in Georgia; does not conduct any manufacturing, sales or service activities here; has never directed any marketing or advertising to Georgia consumers; and does not have any real or personal property in the state.

The McCarthys do not mention the Georgia long-arm statute in their first amended complaint. In fact, the amended complaint avers only that YMC is the parent corporation of YMMC and is located in Japan; it offers no other factual allegations that can be construed as satisfying at least one subsection of the long-arm statute. The McCarthys also do not address the statute in their brief in opposition to YMC's motion. Rather, they generally argue that YMC's contacts with Georgia "are more than sufficient to require it to submit to the jurisdiction of this Court."

As stated above, "where the defendant challenges the court's exercise of jurisdiction over its person, the plaintiff bears the ultimate burden of establishing that personal jurisdiction is present." *Oldfield v. Pueblo De Bahia Lora, S.A.,* 558 F.3d 1210, 1217 (11th Cir.2009). By failing to address the Georgia long-arm statute, which must be satisfied if this Court is to exercise personal jurisdiction over YMC, the McCarthys have failed to carry their burden of establishing personal jurisdiction, and YMC's motion must be granted. Nevertheless, the Court will evaluate the McCarthys' arguments in the context of this statute.

 The only section of the Georgia long-arm statute that YMC's conduct might satisfy is subsection (1), which requires YMC to transact business in Georgia. To "transact any business," YMC must have "purposefully done some act or consummated some transaction" in Georgia. *Diamond Crystal,* 593 F.3d at 1260 (quoting *Aero Toy Store, LLC v. Grieves,* 279 Ga.App. 515, 631 S.E.2d 734, 736–37 (2006)). " 'Transact' means 'to prosecute negotiations,' to 'carry on business,' 'to carry out,' or 'to carry on.' " *Id.*

■ Jurisdiction under subsection (1) "expressly depends on the actual transaction of business—the doing of some act or consummation of some transaction—by the defendant in the state." *Id.* Accordingly, the Court must "examine all of [YMC's] tangible and intangible conduct and ask whether it can fairly be said that [YMC] has transacted any business within Georgia." *Id.*

Mochizuki unequivocally testifies that YMC does not transact business in Georgia. The Court agrees. In *Pratt & Whitney Canada, Inc. v. Sanders*, 218 Ga.App. 1, 460 S.E.2d 94, 95–96 (1995), the court held that the long-arm statute was not satisfied in a products-liability action where the plaintiffs were not residents of Georgia, the defendant was a Canadian company with its principal place of business in Canada, and the underlying accident did not occur in Georgia. The court found that the purchase of the defendant's product by two Georgia corporations was not sufficient to satisfy the long-arm statute where the non-resident defendant was not authorized to do or transact business in Georgia and did not have any offices or employees or a registered agent in the state. *Id.* at 96.

Similarly, YMC is a non-resident defendant who is not authorized to do or transact business in Georgia; it does not have an office, employees, or a registered agent here; and it does not advertise in this state. All the evidence shows is that it purchased the WaveRunner from YMMC, and the details of this transaction are not in the record. Thus, like the sale of the defendant's product to two Georgia corporations in *Sanders*, this single purchase is insufficient to satisfy the long-arm statute. *Accord Kason Indus., Inc. v. Dent Design Hardware, Ltd.*, 952 F.Supp.2d 1334, 1345–46 (N.D.Ga.2013) (subsection (1) of Georgia long-arm statute not satisfied where defen-dant had no offices, manufacturing plants, or distribution facilities in Georgia; never registered to do business in Georgia; did not target Georgia through advertising; and did not have any employees, distributors or sales representatives who resided or worked in Georgia).

Perhaps cognizant of the lack of evidence of YMC transacting business in Georgia, the McCarthys argue that the Court should impute the activities of YMMC to YMC. They contend that YMC engaged in substantial activity in Georgia because YMC controls and operates through YMMC, a sub-subsidiary. Specifically, the McCarthys assert that YMC designed the WaveRunner, which YMMC manufactured in Georgia according to YMC's specifications. Unfortunately, the McCarthys cite to a Florida state-court opinion that applies Florida law to support their imputed-activities theory, so their case does not help them.

■ And under Georgia law, the McCarthys must show that YMC's control over YMMC is "so complete that, the subsidiary is, in fact, merely a division or department of the parent." *Cobb Cnty. v. Jones Grp. P.L.C.*, 218 Ga.App. 149, 460 S.E.2d 516, 519 (1995) (citation and quotation omitted). Although the McCarthys allege that YMC controls and operates through YMMC, they have not provided any evidence to support this contention, which they must do now that YMC has challenged personal jurisdiction.

In conclusion, the McCarthys have failed to carry their burden of establishing personal jurisdiction under Georgia's long-arm statute. As stated above, this alone supports granting YMC's motion.

## 2. Constitutional Requirements

■ Even if the McCarthys were to show that YMC transacts sufficient business in Georgia, the long-arm statute, as

explained by the Georgia Supreme Court in *Innovative Clinical,* 620 S.E.2d at 355, is construed "as reaching only to the maximum extent permitted by due process." And the McCarthys have not shown that due process permits the exercise of personal jurisdiction either.

■■■ "The heart of [the due-process] protection is fair warning—the Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns." *Diamond Crystal,* 593 F.3d at 1267 (citing *Burger King Corp.,* 471 U.S. at 471–72, 105 S.Ct. 2174). The Due Process Clause requires that "the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there." *Burger King,* 471 U.S. at 474, 105 S.Ct. 2174 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). "Therefore, states may exercise jurisdiction over only those who have established certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Diamond Crystal,* 593 F.3d at 1267 (punctuation and citations omitted).

Two types of personal jurisdiction exist: general and specific. The McCarthys have not argued, and indeed the evidence does not show, that general jurisdiction exists. Rather, the McCarthys contend that YMC is subject to specific jurisdiction.

■■■ In specific jurisdiction cases, the "fair warning requirement is satisfied if the defendant has purposefully directed [its] activities at residents of the forum ... and the litigation results from alleged injuries that arise out of or relate to those activities." *Diamond Crystal,* 593 F.3d at 1267 (citing *Burger King,* 471 U.S. at 472–73, 105 S.Ct. 2174). Stated another way,

YMC must have purposefully established contacts with Georgia, and there must be a significant nexus or causal relationship between those contacts and the litigation.

Here, YMC is a foreign corporation that is not registered to do business in Georgia, nor does it have offices, employees or a registered agent here. However, the McCarthys argue that YMC's corporate connection to YMMC and YMC's design of the WaveRunner are sufficient to establish specific jurisdiction.

■■■ "As a general rule, the sovereign's exercise of power requires some act by which the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'...." *J. McIntyre Mach., Ltd. v. Nicastro,* —— U.S. ——, 131 S.Ct. 2780, 2787, 180 L.Ed.2d 765 (2011) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). "In products-liability cases like this one, it is the defendant's purposeful availment that makes jurisdiction consistent with 'traditional notions of fair play and substantial justice.'" *Id.* Thus, the Court focuses on whether the nonresident defendant "deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum." *Diamond Crystal,* 593 F.3d at 1268 (citing *Burger King,* 471 U.S. at 480, 105 S.Ct. 2174).

The defendant's "submission through contact with and activity directed at a sovereign may justify specific jurisdiction 'in a suit arising out of or related to the defendant's contacts with the forum.'" *Nicastro,* 131 S.Ct. at 2788 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). "[I]t is the defendant's actions, not his expectations, that

empower a State's courts to subject him to judgment." *Id.*

In this case, YMC's contacts with Georgia are its designing the accident WaveRunner, which YMMC manufactured here; its purchase of the WaveRunner from YMMC; and its ownership of YMUS, which in turn owns YMMC. These contacts are insufficient to show that YMC deliberately engaged in substantial activities in Georgia such that the exercise of jurisdiction would be consistent with "traditional notions of fair play and substantial justice." *Nicastro*, 131 S.Ct. at 2787 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

In *Nicastro*, 131 S.Ct. at 2790, under similar facts the Supreme Court held that the New Jersey state courts improperly exercised personal jurisdiction over a British manufacturer. The manufacturer's only contacts with the state were its selling the allegedly defective machines to the United States, up to four of which ended up in New Jersey, and its attending trade shows in other states. The manufacturer did not have an office in New Jersey, did not pay taxes or own property there, and did not advertise in or send employees to the state.

YMC's contacts with Georgia are as attenuated as the manufacturer's contacts in *Nicastro*. One difference is that the WaveRunner was manufactured here, but YMMC handled the manufacturing. And as stated previously, the McCarthys have not offered any evidence to support their contention that YMC regularly exercised control of and operated through YMMC such that YMMC's contacts with Georgia should be imputed to YMC. *See Consol. Dev.*, 216 F.3d 1286, 1293 (11th Cir.2000) ("Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because a subsidiary is doing business there."). Thus, YMC has not deliber-ately engaged in activities in this state sufficient to satisfy the minimum-contacts requirement.

■ Moreover, even if YMC had sufficient minimum contacts with Georgia as a result of its relationship with YMMC, the McCarthys have not shown that these contacts are causally related to or have a close nexus with their claims. The Court finds *Fraser v. Smith*, 594 F.3d 842 (11th Cir. 2010), instructive on this point. There, the plaintiffs alleged that the defendant negligently maintained a vessel that led to an onboard explosion in which the plaintiffs were injured. The defendant was a foreign corporation that purchased the vessel from its co-defendant, and the plaintiffs filed suit in the U.S. District Court for the Southern District of Florida, where the codefendant resided and where the defendant purchased the vessel. The defendant moved to dismiss, contending that the district court lacked personal jurisdiction over it.

The Eleventh Circuit found that the defendant's contacts with Florida showed the defendant's "propensity to avail itself of certain forum goods, services, and advertising." *Id.* at 850. But the court held that these contacts did not focus, as required, on the direct causal relationship between the defendant, the forum, and the plaintiffs' claims. *Id.* In analyzing the causal relationship, the court held that the plaintiffs' claims were not sufficiently related to the defendant's purchase of the vessel to support specific jurisdiction. The court reasoned that the purchase might support specific jurisdiction over the defendant on contractual claims arising directly therefrom, but held that "[b]uying goods from within a forum does not make a nonresident defendant amenable to suit there on the unrelated tort claims of a third party." *Id.* at 851.

Similarly, YMC purchased the WaveRunner from YMMC, and the McCarthys' claims do not arise from that transaction. Consequently, the purchase transaction is not causally related to their claims and cannot serve as a basis for specific jurisdiction over YMC. And while the McCarthys contend that YMC designed the WaveRunner, had YMMC manufacture the WaveRunner according to that design, and controls YMMC, they have not presented evidence to support these contentions or case law that found such contacts were causally related to a third party's products-liability claims. Thus, the McCarthys have not satisfied the constitutional inquiry either, and the Court will grant YMC's motion on this basis as well.

### D. Jurisdictional Discovery

▮ The McCarthys contend that if the Court finds their evidence insufficient to establish personal jurisdiction over YMC, they should be allowed to conduct "limited jurisdictional discovery to establish the level and nature of YMC's contacts with the State of Georgia." The McCarthys, however, fail to acknowledge that the extended discovery period is now closed and that the scheduling order explicitly warned that additional extensions were not likely.

The McCarthys also offer no explanation for their failure to adduce sufficient jurisdictional facts during the extended discovery period.[3] This is concerning because the amended complaint does not aver any facts in support of this Court's having personal jurisdiction over YMC, and the scant jurisdictional facts offered in the McCarthys' opposition brief shows that they were clearly aware that they possessed limited facts about YMC and its connections, if any, with Georgia. While YMC's motion was not filed until December 5, the McCarthys could have immediately served jurisdictional discovery requests, and it does not appear that they did. Indeed, YMC states that the McCarthys did not propound discovery upon it until the final days of the extended discovery period, and the McCarthys have not said whether these discovery requests sought jurisdictional information. Consequently, the Court is not inclined to allow additional discovery.

In addition, YMC contends that because the McCarthys have failed to even establish a prima facie case for personal jurisdiction, they are not entitled to jurisdictional discovery. And as YMC points out in its reply brief, the McCarthys did not "attach any proposed discovery, nor do they indicate what such discovery would show to establish jurisdiction." *Cf. Kason Indus.*, 952 F.Supp.2d at 1352–53 (plaintiff at least provided list of jurisdictional information it would seek from defendant); *Atlantis Hydroponics*, 915 F.Supp.2d at 1379 (same).

The McCarthys' failure to establish a prima facie case for personal jurisdiction and to provide examples of discovery requests they would propound means that they have essentially asked for a jurisdictional fishing expedition, and the Court is not required to allow such an expedition. *See Kason Indus.*, 952 F.Supp.2d at 1353 (denying jurisdictional discovery "on a mere 'hunch that there may be facts—or a desire to find out if there are any facts— that justify the exercise of personal jurisdiction.'" (quoting *Atlantis Hydroponics*, 915 F.Supp.2d at 1379–80)). Thus, the Court will not reopen discovery.

---

**3.** The original discovery period was eight months and ended on March 15, 2013. The extended discovery period ended on December 15, 2013, for a total discovery period of seventeen months.

## III. Conclusion

Defendant YMC's motion to dismiss for lack of personal jurisdiction [54] is GRANTED. Plaintiffs' claims against YMC are DISMISSED WITHOUT PREJUDICE, and YMC is DROPPED as a party to this action.