Peter Anthony McCARTHY and
Maureen McCarthy,
Plaintiffs,

v.

YAMAHA MOTOR MANUFACTURING
CORPORATION, Defendant.

Civil Action No. 3:12–CV–117–TCB.

United States District Court,
N.D. Georgia,
Newnan Division.

Signed Feb. 28, 2014.

Peter J. McNulty, McNulty Law Firm, Los Angeles, CA, Jeffrey Paul Lutz, Gilbert, Harrell, Sumford & Martin, P.C., Brunswick, GA, for Plaintiffs.

Richard A. Mueller, Thompson Coburn, LLP, St. Louis, MO, for Defendant.

### *ORDER*

TIMOTHY C. BATTEN, SR., District Judge.

This case comes before the Court on Defendant Yamaha Motor Manufacturing Corporation's ("YMMC") motion for leave to file a motion to determine the substantive law of this case [69].

### I. Motion for Leave to File

This is a products-liability action over which the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiffs Peter and Maureen McCarthy are Austra-

lian citizens. On April 5, 2010, Peter was injured while operating a Yamaha WaveRunner personal watercraft in Queensland, Australia. Peter suffered, among other things, severe injuries to his spinal cord. YMMC is a Georgia corporation with its principal place of business in Newnan, Georgia, where the WaveRunner was manufactured. Based on these facts, YMMC contends that the Court should apply Georgia's choice-of-law rules, which require the application of Australia's substantive law since the accident occurred there.

The McCarthys do not dispute that the accident occurred in Australia or that Georgia's choice-of-law rules apply. They also acknowledge that under these rules, Australia's substantive law would typically apply; however, they contend that Georgia law nonetheless governs this case because of the public-policy exception to Georgia's choice-of-law rules and the doctrine of *renvoi*.

On November 22, 2013, the Court held an in-chambers conference to discuss various issues raised by the parties. During the conference, counsel informed the Court that they disagreed as to whether the substantive law of Georgia or Australia governed the McCarthys' claims, and the Court instructed Defendants [1] to file a motion presenting their position on or before December 6. That day, former Defendant YMC filed a motion to apply the substantive law of Australia, and the heading and opening paragraph of the motion identify only YMC. The McCarthys pointed this out in their brief in opposition to YMC's motion to dismiss, which they filed on December 19. YMC did not respond to this argument in its reply brief in support of its motion to dismiss, nor did its counsel seek leave to correct what YMMC has now identified as a mistake.

On January 24, 2014, the Court issued an order granting YMC's motion to dismiss and dropping it as a party. Because YMC did not make clear that the motion was filed on behalf of YMC and YMMC, on January 27, 2014, the Court issued an order denying as moot YMC's motion to apply the substantive law of Australia. On January 30, YMMC filed a motion for leave to refile the motion on its own behalf. YMMC explains that the motion was inadvertently filed on behalf of YMC and that it should have been filed on YMMC's behalf instead. YMMC does not offer an explanation as to why it did not notify the Court of its inadvertence when the McCarthys first raised the issue.

In response to YMMC's motion for leave, the McCarthys state that they do not oppose the motion for leave to refile,[2] but that they do still oppose the application of the substantive law of Australia to their claims.

Even though YMMC has not explained why it took so long to correct its mistake (almost two months after the original deadline), the Court will grant it leave to file and consider the merits of its motion for the application of the substantive law

---

1. At that time, there were two Defendants: YMMC and Yamaha Motor Co., Ltd. ("YMC"). On January 24, 2014, 994 F.Supp.2d 1318, 2014 WL 457698 (N.D.Ga.2014), the Court issued an order that granted YMC's motion to dismiss due to lack of personal jurisdiction. On February 21, the McCarthys filed a motion for reconsideration of that order.

2. Yet in a footnote of their motion for reconsideration of the Court's order granting

YMC's motion to dismiss, the McCarthys complain that YMMC continues to delay this case, most recently with its motion for leave, which was filed after the Court's December 6 deadline. Because this argument was not included in their brief in opposition to the motion for leave, the Court will not consider it in this Order.

of Australia. The Court will have to determine the substantive law at some point, and it is preferable to do so now than at the summary-judgment stage or at the pretrial conference. Thus, the Court GRANTS YMMC's motion for leave [69], and because the parties have fully briefed the renewed motion to apply the substantive law of Australia, the Court now turns to the merits of that motion.

## II. Motion For Application of Australian Law

### A. Legal Standard

 Federal courts sitting in diversity must apply the forum state's choice-of-law principles. *Fed. Rural Elec. Ins. Exch. v. R.D. Moody & Assocs., Inc.,* 468 F.3d 1322, 1325 (11th Cir.2006); *Acme Circus Operating Co. v. Kuperstock,* 711 F.2d 1538, 1540 (11th Cir.1983). In Georgia, choice-of-law issues in tort cases are "governed by the rule of *lex loci delicti,* which requires application of the substantive law of the place where the tort or wrong occurred." *Carroll Fulmer Logistics Corp. v. Hines,* 309 Ga.App. 695, 710 S.E.2d 888, 890 (2011) (citing *Dowis v. Mud Slingers, Inc.,* 279 Ga. 808, 621 S.E.2d 413, 419 (2005)). "[T]he place of wrong, the *locus delicti,* is the place where the injury sustained was suffered rather than the place where the act was committed, or ... it is the place where the last event necessary to make an actor liable for an alleged tort takes place." *Risdon Enters., Inc. v. Colemill Enters., Inc.,* 172 Ga.App. 902, 324 S.E.2d 738, 740 (1984).

 But Georgia's choice-of-law rules limit the application of another jurisdiction's laws to "statutes and decisions construing those statutes," even for tort claims. *Frank Briscoe Co. v. Ga. Sprinkler Co.,* 713 F.2d 1500, 1503 (11th Cir. 1983) (citing *Budget Rent–A–Car Corp. v. Fein,* 342 F.2d 509 (5th Cir.1965), and

*White v. Borders,* 104 Ga.App. 746, 123 S.E.2d 170 (1961)). Consequently, "[w]hen no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.; see also Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 725 n. 6 (11th Cir.1987) ("If a particular state does not have a controlling statute, however, the Georgia choice of law rule requires application of the common law as construed by the courts of Georgia."); *Risdon Enters.,* 324 S.E.2d at 741 (applying the rule in a wrongful-death case: " 'While the courts of this State will follow the decisions of a sister State construing the statutes thereof, they are not bound by the interpretation placed upon the common law by the courts of other States.' " (quoting *Lay v. Nashville, Chattanooga & St. Louis Ry. Co.,* 131 Ga. 345, 62 S.E. 189, 189 (1908))).

 Also, Georgia's choice-of-law rules are subject to a public-policy exception. Where the application of foreign law (whether another state or another country) contravenes Georgia public policy, the court need not apply the foreign law. *Bailey v. Cottrell, Inc.,* 313 Ga.App. 371, 721 S.E.2d 571, 573 (2011). In order for the exception to apply, the foreign law and Georgia law must be "sufficiently dissimilar" such that applying the foreign law would contravene the public policy of Georgia espoused in the law relevant to the case. *Id.* at 574; *see also Alexander v. Gen. Motors Corp.,* 267 Ga. 339, 478 S.E.2d 123, 124 (1996) (Virginia's products-liability law contravened Georgia's public policy and did not apply even though underlying events occurred in Virginia, as application of its law put plaintiff in very position Georgia law was intended to protect against).

## III. Analysis

 As stated above, the parties do not dispute that the accident occurred in Aus-

tralia, that Georgia's choice-of-law rules apply, and that under these rules Australia's substantive law would typically govern the case. Thus, YMMC contends that the following law is considered substantive Australian law and is applicable to the claims and defenses in this case:

(1) Statutory caps or limits on potential damages;

(2) Statutory limits on when punitive damages are allowed;

(3) Application of the "English Rule," which entitles the prevailing party to attorney's and expert fees and other reasonable expenses; and

(4) Statutory affirmative defenses that could preclude the McCarthys' claims.

The McCarthys do not challenge YMMC's characterization of the above law as substantive (as opposed to procedural) or its characterization of the substance of Australian law on these four issues. Rather, they contend that either the public-policy exception or the doctrine of *renvoi* require the application of Georgia law.

## A. Public–Policy Exception

■■■ Since the McCarthys contend that the public-policy exception applies, they bear the burden of establishing it. *Luigino's Int'l, Inc. v. Miller*, 311 Fed.Appx. 289, 292 (11th Cir.2009).

### 1. Damages Cap

Queensland's Civil Liability Acts[3] ("CLA") imposes an approximately $230,000 cap on general damages (including emotional distress, pain and suffering, and other non-economic damages) sought

in negligence claims, and Australia's Trade Practices Act ("TPA") imposes an approximately $274,000 cap on damages sought in strict-liability claims. Australia also limits damages for lost income to the average earnings of a Queensland resident, which was AUD $1,485.80 for the relevant time period.

The McCarthys contend that Georgia law does not impose similar limits, and as a result Australia's damages caps contravene public policy. They rely on *Tyson Foods, Inc. v. Craig*, 266 Ga.App. 443, 597 S.E.2d 520, 521 (2004), and *Carroll Fulmer*, 710 S.E.2d at 890–91, to support their argument.

*Tyson Foods* was a negligence action filed by a Texas resident in Georgia for injuries sustained in an accident that occurred in this state. The plaintiff settled with the alleged tortfeasors, and his employer moved to enforce its subrogation claim, which was based on the workers' compensation payments it had paid to the plaintiff as a result of the injuries he suffered in the accident at issue in the negligence action. The employer contended that the court had to give full faith and credit to the Texas workers' compensation statute, which allowed it to be paid first from the settlement funds for its payments.

The court held that Georgia's workers' compensation statute governed the employer's claim because the injury occurred and the plaintiff was eligible to receive workers' compensation benefits in Georgia. Most importantly, the court did not hold that Georgia law applied as a result of the public-policy exception.[4] Consequently,

---

**3.** As stated earlier, Queensland is the Australian state in which the accident occurred.

**4.** In dicta, the court did mention Georgia's public policy of compensating injured workers first from settlement or judgment funds

(unlike Texas's, which pays the workers' compensation carrier or employer first) when explaining how the employer had failed to distinguish the cases that required application of Georgia law. But even if this portion of the opinion were binding precedent, it would not

this case does not support the McCarthys' argument that the public-policy exception applies in this case.

In *Carroll Fulmer*, the plaintiffs brought a wrongful-death action in Georgia for a tort that occurred in Florida. Under Georgia's choice-of-law rules, Florida substantive law applied. However, the court determined that Florida's wrongful-death statute should not apply because it contravened the public policy promoted by Georgia's wrongful-death statute. Dispositive to the court's holding were the facts that the Florida statute measured damages from a different perspective and eliminated the possibility of a separate recovery for pre-death suffering, which is allowed by Georgia law.

The McCarthys have not shown that Australia's cap on damages suffers similar infirmities, i.e., that it calculates damages from a different perspective than and wholly limits one avenue of recovery allowed under Georgia products-liability law. And the McCarthys have not cited to other cases where damages caps were held to contravene the public policy espoused in Georgia's products-liability or analogous statutes.

Thus, the exception does not apply to the McCarthys' request for damages, and the Court will apply Australian law when determining any limits thereon.

### 2. Punitive Damages

Relying on provisions of the CLA and TPA, YMMC contends that Australian law does not allow an award of punitive damages unless the plaintiff shows a specific intent to harm during the course of an unlawful act. YMMC asserts that the McCarthys' complaint does not aver such

support application of the public-policy exception to this case. Texas's statute requires an entirely different party to be paid first from the proceeds of a lawsuit against a negli-

allegations, and thus Australian law does not allow their punitive-damages claim.

The McCarthys respond that Georgia's punitive-damages statute explicitly provides that "there shall be no limitation regarding the amount which may be awarded as punitive damages." O.C.G.A. § 51–12–5.1(e)(1). This is indeed an accurate quote of the statute; however, the McCarthys focus on the wrong portion of the statute.

Australian law does not impose a cap on punitive damages; rather, it limits the cases in which punitive damages are allowed. Georgia's statute also limits when punitive damages can be awarded; it requires the plaintiff to show "by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." *Id.* 51–12–5.1(0). These limitations appear to be similar enough, or not so dissimilar, to the limitation imposed by Australian law, and the McCarthys have not argued otherwise. Thus, the McCarthys have not shown that the public-policy exception applies, and the Court will apply Australian law when evaluating the merits of the punitive-damages claim.

### 3. English Rule

According to YMMC, Australia applies the "English Rule," which entitles the prevailing party to recover its fees and reasonable expenses.

Citing O.C.G.A. § 9–11–68, the McCarthys contend that a prevailing party in Georgia may seek fees and costs only if (1) the defendant makes an offer of settlement that is rejected by the plaintiff; and (2)

gent third party, which could entirely eliminate any payment to the injured worker. Australia's damages caps do not do this.

the final judgment is one of no liability or is less than seventy-five percent of the offer of settlement. And even if these criteria are met, the defendant may only recover reasonable fees and expenses incurred from the date the plaintiff rejects the offer of settlement through the entry of judgment. The McCarthys argue that the differences between O.C.G.A. § 9–11–68 and Australian law are so great that the public-policy exception should apply; they do not cite to a case or a statute to support their argument.

■ As an initial matter, the Court notes that YMMC has not provided a statutory basis for Australia's application of the English Rule. To support its interpretation of Australian law, YMMC relies on the affidavit of Richard Douglas, QC, who is a barrister in Queensland, Australia, and has been practicing law there since 1981. In his affidavit, Douglas testifies that the McCarthys are liable "under Australian law" for YMMC's costs and expenses if YMMC prevails. He then testifies that "[u]nder the rules of court, which are reasonably uniform in this regard across the Commonwealth, State and Territories, costs ordinarily follow the event." Thus, he has not provided a statutory basis for the application of the English Rule in his testimony.

As stated earlier, "[w]hen no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Frank Briscoe,* 713 F.2d at 1503. And "[g]enerally, an award of attorney fees is not available in Georgia unless authorized by statute or contract." *Horton v. Dennis,* 750 S.E.2d 493, 496 (Ga.Ct.App.2013). As a result, the Court will apply Georgia law when evaluating any request for fees on this basis and need not reach the McCarthys' public-policy-exception argument.

The Court also notes that Douglas testifies that Australian courts retain "discretion to make no award as to costs, or to apportion the award of costs to the various parties depending on success across the pleaded issues." So even if the Court were to apply Australian law, the rule is not as absolute as YMMC contends.

In conclusion, the Court will apply Georgia law to any request for fees and costs made by the prevailing party. That being said, the Court will allow YMMC, if it prevails, to argue for the application of the English Rule if it decides to request payment of its fees and costs.

### 4. Affirmative Defenses

YMMC argues that the CLA allows it to assert the defenses of voluntary assumption of an obvious risk and of participation in a dangerous recreational activity, and that these defenses may bar the McCarthys' recovery. YMMC also asserts that under the TPA, the McCarthys' damages may be reduced to zero as a result of their contributory negligence.

Although the McCarthys assert that all three defenses are contrary to Georgia's public policy, they provide argument only as to the contributory-negligence defense. They contend that O.C.G.A. § 51–12–33 does not contemplate a complete bar to recovery unless the jury finds the plaintiff to be more than fifty percent at fault. Thus, they argue that the Australian defense is more harsh and contrary to public policy. However, the Australia rule is not harsher; it is actually more generous because it does not eliminate the McCarthys' recovery even if they are found more than fifty percent at fault. Thus, unlike Georgia law, a jury could determine that the McCarthys are seventy-five percent at fault, and under Australian law, they could still recover twenty-five percent of their damages, whereas in Georgia their recovery would be wholly barred.

Accordingly, the Court finds that the McCarthys have not carried their burden of showing that the public-policy exception precludes YMMC's assertion of these affirmative defenses under Australian law.

### B. Doctrine of *Renvoi*

 *Renvoi* is the "doctrine under which a court in resorting to foreign law adopts as well the foreign law's conflict-of-laws principles, which may in turn refer the court back to the law of the forum." BLACK'S LAW DICTIONARY 1412 (9th ed. 2009). The McCarthys contend that under this doctrine, the Court applies the substantive law of Australia, which requires adopting Australia's choice-of-law principles, which in turn direct the Court back to Georgia law because the defective WaveRunner was made here. The McCarthys rely on the affidavit of their expert, Peter Cashman, PhD., who is a professor of law and barrister in Australia.

Cashman testifies that "it is more likely than not that an Australian Court would apply the law of the jurisdiction where such negligence occurred, resulting in the manufacture of a defective product, and not Australian law." He also testifies that he made this argument in a products-liability action filed in Australia against an American corporation, but he does not testify as to whether the court accepted his argument.

In addition, neither Cashman nor the McCarthys have provided the Court with any opinions from Australian or American courts that apply *renvoi* under circumstances similar to the facts of this case. Nor have they provided an opinion interpreting Australia's choice-of-law rules and holding that the rules required application of the law of the forum where the defective product was manufactured, even if that forum is not Australia.

Thus, the Court will not apply *renvoi* to this case, as the McCarthys have not carried their burden of showing that it applies.

### IV. Conclusion

Defendant YMMC's motion for leave to file its motion for the application of the substantive law of Australia [69] is GRANTED. The Clerk is DIRECTED to docket Exhibit A to that motion [69] as a "motion for application of Australian substantive law by Defendant Yamaha Motor Manufacturing Corporation."

Further, the Court GRANTS IN PART and DENIES IN PART the motion for application of Australian substantive law. The Court will apply Australian law when (1) determining whether the McCarthys' damages should be capped, (2) evaluating their punitive-damages claim, and (3) evaluating the defenses YMMC may assert. But the Court will apply the substantive law of Georgia, where appropriate, to any request for fees and costs by the prevailing party.